IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN SHEPHERD, as administratrix of the Estate of CHRISTOPHER SHEPHERD,<br><br>Plaintiff,<br><br>v.<br><br>GILES WRIGHT, BALDWIN BOROUGH, a municipal entity, BRENTWOOD BOROUGH, a municipal entity, BETHEL PARK BOROUGH, a municipal entity, SOUTH HILLS AREA COUNCIL OF GOVERNMENTS, a municipal entity, and DOE POLICE OFFICERS 1-20,<br><br>Defendants. | Civil Action No.   2024-CV-00526<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Susan Shepherd, through her attorneys Todd J. Hollis Law and Colianni & Leonard LLC, complains as follows:

**INTRODUCTION**

1. This is an action for wrongful death and violations of 42 U.S.C. § 1983 arising out of the senseless killing by police officers of a man experiencing a mental health crisis.

2. On the evening of January 7, 2024, Christopher Shepherd ("Mr. Shepherd"), a 48-year-old man suffering from a mental health episode, was killed outside his home in the South Hills when police officers from the South Hills Area Council of Government's Critical Incident Response Team ("CIRT") shot him multiple times in the back.

3. At the time he was shot and killed, Mr. Shepherd did not pose a threat of serious harm to the CIRT officers or anyone else. Mr. Shepherd was holding a kitchen knife and was

running away from the officers when they shot him. The officers were standing a considerable distance from Mr. Shepherd and were not in harm's way.

4. Mr. Shepherd had no criminal record and no history of violence. The police had been called to Mr. Shepherd's home by his family for help in taking him to the hospital for treatment. When the officers arrived, Mr. Shepherd could not understand their commands and was afraid to come out of his home. But instead of taking measures to de-escalate the situation, the responding officers used lethal force that was grossly disproportionate and unreasonable to use on a nonviolent person suffering from a mental health crisis. All of these acts violated Mr. Shepherd's Fourth Amendment rights.

5. The municipalities with oversight authority over the responding officers are also liable for failing to train the officers. The municipalities knew or should have known that persons with mental illness do not perceive and respond to directions and commands in the same way as individuals who are not suffering from a mental health crisis. Despite this knowledge, the municipalities failed to train their officers in how to engage with mentally ill persons who may not understand commands, as well as in tactics to de-escalate incidents involving a mental health crisis to eliminate the need for lethal force. This failure to train led directly to the use of excessive force against Mr. Shepherd and the violation of his Fourth Amendment rights.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. §1331 and §1343, as plaintiff's claims arise under the Constitution and laws of the United States.

7. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367(a).

8. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1391(b)(2) because the events giving rise to plaintiff's claims occurred in this district.

## THE PARTIES

9. Plaintiff Susan Shepherd is the mother of Mr. Shepherd. She is suing in her capacity as the administratrix of the estate of Mr. Shepherd.

10. Defendant Giles Wright ("Detective Wright") is a Bethel Park Police Detective and the commander of SHACOG's CIRT team. At all relevant times, Wright was acting under color of law. He is being sued in his individual capacity.

11. Defendant Baldwin Borough is an incorporated borough located in Allegheny County, Pennsylvania. Baldwin Borough has its own police department supervised by the borough mayor and borough counsel.

12. Defendant Brentwood Borough is an incorporated borough located in Allegheny County, Pennsylvania. Brentwood Borough has its own police department supervised by the borough mayor and borough counsel.

13. Defendant Bethel Park Borough is an incorporated borough located in Allegheny County, Pennsylvania. Bethel Park Borough has its own police department supervised by the borough mayor and borough counsel.

14. Defendant South Hills Area Council of Governments ("SHACOG") is a non-profit corporation comprised of boroughs and townships in the South Hills area of Pittsburgh. Baldwin, Brentwood, and Bethel Park Boroughs are members of SHACOG.

15. SHACOG maintains and funds a CIRT team comprised of police officers from its borough members. CIRT is essentially another name for a SWAT team. Its primary mission is to respond to situations involving hostages, active shooters, or persons with firearms who are

threatening police officers or the public.

16. Doe Police Officers 1-20 are individual police officers from Baldwin, Brentwood, and Bethel Park Boroughs who were members of the CIRT team present at the Shepherd residence on January 7, 2024.

17. At all relevant times, Doe Police Officers 1-20 were acting under color of law. They are being sued in their individual capacities.

18. Plaintiff does not know the names of Doe Police Officers 1-20. She will amend the Complaint to add the names of these unknown defendants when she obtains this information.

## GENERAL ALLEGATIONS

19. Mr. Shepherd resided with his mother, Susan Shepherd, in Upper St. Clair, Pennsylvania.

20. Mr. Shepherd suffered from a mental health disorder throughout his adult life. He took medications to treat his disorder and saw a psychiatrist.

21. Mr. Shepherd lived a full and productive life despite his mental health challenges. A Duquesne graduate with a degree in finance, he was the chairman of the Pennsylvania chapter of the Sierra Club, the largest environmental nonprofit organization in the country. Mr. Shepherd had many friends and was known for his kindness, gentleness, and generosity. There were times, however, when Mr. Shepherd experienced episodes in which he would have delusional thoughts. These episodes were infrequent and usually short-lived.

22. In early January 2024, Mr. Shepherd began having delusional symptoms. Concerned for his safety, his mother filed a petition to hospitalize him under Section 302 of Pennsylvania's Mental Health Procedures Act. Section 302 allows for the hospitalization of persons undergoing a mental health episode when they become a danger to themselves or others.

23. At approximately 3:30 p.m. on January 7, the Upper St. Clair police went to the Shepherd residence to serve his mother's 302 petition and take Mr. Shepherd to the hospital. Mr. Shepherd was alone in the house. His mother was waiting in a police car. Before the officers approached the house, she confirmed that there were no firearms or other persons in the house.

24. The officers knocked on the front door and announced that they were there to serve a 302 petition. Mr. Shepherd did not believe that the officers were actually the police, and fearing for his safety, refused to answer the door. When the officers continued to knock, Mr. Shepherd pushed a kitchen knife through a plywood board covering a broken window near the front door. Mr. Shepherd's use of the knife was a symptom of his mental health condition - he thought the officers were there to harm him and he used the knife defensively to ward off a perceived threat rather than to assault the officers.

25. After seeing the knife, the officers called SHACOG's CIRT team.

26. CIRT officers arrived at the Shepherd home at 5:00 p.m. under the command of Detective Wright. As the CIRT commander, Detective Wright directly supervised the CIRT officers at the scene and made all tactical decisions.

27. When they arrived on the scene, Detective Wright and his CIRT team were informed that Mr. Shepherd was suffering from a mental health episode, was alone in the house, did not have a firearm, and was armed only with a kitchen knife.

28. Detective Wright ordered his officers to establish a perimeter around the house and to evacuate several neighboring homes. A CIRT negotiator then tried to talk to Mr. Shepherd, but Mr. Shepherd could not understand the negotiator because of his delusional symptoms.

29. At approximately 8:30 p.m., Detective Wright decided to escalate the encounter by forcing Mr. Shepherd out of his home with tear gas, even though Mr. Shepherd's continued

presence in his own home was not posing an immediate threat of harm to the officers or the public.

30. At Detective Wright's direction, CIRT officers shot baton rounds through the living room windows of the house and then fired tear gas rounds through the shattered windows.

31. Shortly after the tear gas was deployed, Mr. Shepherd came out of the house through the garage door.

32. The CIRT officers, who were positioned at the end of the driveway and were a considerable distance from the garage door, shouted at Mr. Shepherd to put up his hands. Mr. Shepherd ran toward the side of his home, away from the officers. As he was running, several CIRT officers shot Mr. Shepherd eight times in the back and killed him.

33. The CIRT officers' use of deadly force was excessive and objectively unreasonable. Mr. Shepherd was running away from the officers and did not pose an immediate threat of serious harm to the officers or anyone else.

34. The use of lethal force was also objectively unreasonable because less lethal alternatives were available to subdue Mr. Shepherd. Mr. Shepherd was alone in his house and was armed only with a kitchen knife. He was not threatening anyone. Under these circumstances, the CIRT team could have reasonably and safely used less-lethal options (such as 40-millimeter launchers, bean-bag rounds, tasers or K-9 units) to take Mr. Shepherd into custody.

35. Detective Wright had over three hours to assemble less-lethal means of force and to coordinate and implement a plan to take Mr. Shepherd into custody without using deadly force. He chose to do none of those things. Detective Wright's only "plan" was for the CIRT team to force Mr. Shepherd from his home, shout commands they knew he wouldn't understand, and then shoot him.

36. Detective Wright used tactics and a level of force appropriate for situations

involving an active shooter or a gunman threatening officers or others. But these tactics were unreasonable and disproportionate to use against a mentally ill man who was not armed with a gun and not posing an immediate threat of harm to anyone.

## COUNT I
## VIOLATIONS OF 42 U.S.C. §1983: ILLEGAL SEIZURE AND USE OF EXCESSIVE FORCE IN VIOLATION OF MR. SHEPHERD'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Against Detective Wright)

37. The Fourth Amendment prohibits law enforcement officers from using force that is objectively unreasonable in light of the facts and circumstances confronting them.

38. Detective Wright participated in the violation of Mr. Shepherd's Fourth Amendment rights by failing to develop and implement a tactical plan to use less lethal force to detain Mr. Shepherd. This failure to implement less lethal force rendered the use of lethal force disproportionate and unreasonable.

39. Detective Wright knew or should have known that, without a plan to use less lethal force, his directive to force Mr. Shepherd from his home with tear gas would result in the use of unreasonable deadly force and violate Mr. Shepherd's Fourth Amendment rights.

40. Detective Wright also violated Mr. Shepherd's Fourth Amendment rights by ordering the CIRT team to force Mr. Shepherd from his home with baton rounds and tear gas. This use of force was objectively unreasonable because Mr. Shepherd's continued presence in his own home did not pose a risk of harm to the officers or the public, and because it escalated the situation and led to the unreasonable use of deadly force.

41. As a direct and proximate result of Detective Wright's use of excessive force, Mr. Shepherd suffered damages, including loss of life, loss of enjoyment of life, pain and suffering between the time of injury and the time of death, lost future earning capacity and burial fees.

42. Detective Wright's acts and omissions were malicious and recklessly indifferent to the Constitutional rights of Mr. Shepherd, entitling plaintiff to recover punitive damages in an amount sufficient to punish and to protect others from similar conduct.

43. Plaintiff is entitled to reasonable attorney fees, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

## COUNT II
### VIOLATIONS OF 42 U.S.C. §1983: ILLEGAL SEIZURE AND USE OF EXCESSIVE FORCE IN VIOLATION OF MR. SHEPHERD'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
**(Against Doe Police Officers 1-20)**

44. Doe Police Officers 1-20 either shot Mr. Shepherd or fired shots at him and missed.

45. Doe Police Officers 1-20's use of force was excessive and objectively unreasonable in violation of Mr. Shepherd's Fourth Amendment rights.

46. When Doe Police Officers 1-20 shot Mr. Shepherd in the back, he posed no immediate threat of serious bodily harm to the officers or anyone else.

47. Doe Police Officers 1-20 were armed with pepper spray, batons, tasers, 40-millimeter launchers, and beanbag rounds, and they are trained in tactical takedowns. Knowing that Mr. Shepherd was suffering from a mental health crisis and only armed with a kitchen knife, it was excessive and unreasonable for the officers not to use less lethal means of force to subdue him.

48. It was also an excessive and unreasonable use of force for Doe Police Officers 1-20 to force Mr. Shepherd from his own home with baton rounds and tear gas when his continued presence there posed no threat of harm to anyone. The deployment of the tear gas led directly to the subsequent use of deadly force.

49. As a direct and proximate result of Doe Police Officers 1-20's use of excessive

force, Mr. Shepherd suffered damages, including loss of life, loss of enjoyment of life, pain and suffering between the time of injury and the time of death, lost future earning capacity and reasonable burial fees.

50. Doe Police Officers 1-20's acts and omissions were malicious and recklessly indifferent to the Constitutional rights of Mr. Shepherd, entitling plaintiff to recover punitive damages in an amount sufficient to punish and to protect others from similar conduct.

51. Plaintiff is entitled to reasonable attorney fees, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

## COUNT III
## 42 U.S.C. § 1983 - MUNICIPAL LIABILITY
**(Against SHACOG, Baldwin Borough, Bethel Park Borough, and Brentwood Borough)**

52. SHACOG, Baldwin Borough, Bethel Park Borough, and Brentwood Borough (collectively the "Municipal Defendants") knew that the officers under their command frequently responded to mental health calls.

53. The Municipal defendants had actual or constructive knowledge that persons with mental illnesses do not respond to commands, and to escalating force, in the same way as persons who are not mentally ill. They knew that when dealing with a person undergoing a mental health crisis, the increased use of force may exacerbate a situation, unlike when dealing with scenarios, where increased force is more likely to result in compliance.

54. The Municipal Defendants also knew that their police officers frequently attempt to arrest fleeing persons.

55. Despite this knowledge, the Municipal Defendants failed to promulgate specific policies, and failed to train officers under their command, in the use of force when dealing with persons undergoing mental health crises, and in the constitutional constraints on using deadly force

on fleeing suspects.

56. The Municipal Defendants failed to have policies - and failed to train their officers - concerning the following:

- tactics for de-escalating incidents involving persons suffering from mental health crises to reduce the need for lethal force;

- how to approach persons suffering from mental illness who may not process or understand commands;

- tactics for using less lethal means of force when confronting a mentally ill person who is not armed with a firearm;

- training in the use of less-lethal weapons and equipment to support de-escalation efforts in situations involving persons undergoing mental health episodes;

- the constitutional limitations on the use of lethal force on a fleeing person who has not committed a crime and does not pose an immediate threat of harm to the public;

57. The need for this training was so obvious that the Municipal Defendants knew that, without it, the constitutional rights of persons would likely be violated.

58. The Municipal Defendants' failure to establish policies and to train their officers amounted to deliberate indifference to the Fourth Amendment rights of persons who came into contact with their officers and was the moving force behind the violation of Mr. Shepherd's Fourth Amendment rights.

59. As a direct and proximate result of the Municipal Defendants' deliberate indifference, Mr. Shepherd suffered damages, including loss of life, loss of enjoyment of life, loss of consortium, pain and suffering between the time of injury and the time of death, lost future earning capacity, and reasonable burial fees.

60. Plaintiff is entitled to reasonable attorney fees, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

## COUNT IV
## 42 Pa.C.S.A. § 8301-8302- WRONGFUL DEATH and SURVIVAL
### (Against all Defendants)

61. Mr. Shepherd died on January 7, 2024.

62. The direct and proximate cause of his death was the excessive force by Doe Police Officers 1-20. The use of excessive force constitutes a battery under Pennsylvania law. Doe Police Officers 1-20 intentionally caused harmful and offensive bodily contact with Mr. Shepherd. The battery was not privileged because the use of force was unreasonable and excessive.

63. The Municipal Defendants, as the employers of Doe Police Officers 1-20, are responsible for their wrongdoing under the doctrine of respondeat superior.

64. As a wrongful death beneficiary, Susan Shepherd suffered damages including loss of consortium, loss of reasonable funeral expenses, and loss of financial support. In her capacity as administratrix of Mr. Shepherd's estate, she is entitled to recover damages for Mr. Shepherd's pain and suffering between the time of injury and the time of death and his lost earning capacity.

## COUNT V
## BATTERY UNDER PENNSYLVANIA LAW
### (Against all Defendants)

65. Doe Police Officers 1-20, acting within the scope of their employment, knowingly and intentionally battered Mr. Shepherd as described above.

66. Doe Police Officers 1-20's actions were not justified and constituted the unreasonable and unnecessary use of force.

67. Doe Police Officers 1-20's actions directly and proximately caused Mr. Shepherd to be injured and suffer damages.

68. The Municipal Defendants, as the employers of Doe Police Officers 1-20, are responsible for their wrongdoing under the doctrine of respondeat superior.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against all Defendants, award her compensatory damages in an amount to be proven at trial, award her punitive damages (against the individual officers only), attorneys' fees, costs of suit, expert fees, and any other and further relief the Court deems just and proper.

Respectfully submitted,

**COLIANNI & LEONARD LLC**
Attorneys for Plaintiff Susan Shepherd

DATED: April 8, 2024

/s/Vincent Colianni II
Vincent Colianni II Esq., PA I.D. # 324050
925 Park Plaza
Wexford, PA 15090
Telephone: (412) 680-7877/(340) 719-1766
Facsimile: (340) 719-1770
vinny@colianni.com

**TODD J. HOLLIS LAW**
Attorneys for Plaintiff Susan Shepherd

/s/Todd J. Hollis
Todd J. Hollis, Esq., PA I.D. #72510
202 Penn Plaza
Turtle Creek, PA 15145
Telephone: (412) 515-4483
Facsimile: (412) 646.5748
toddjhollis@gmail.com